# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9130 | **DATE** | 10/18/2004 |
| **CASE TITLE** | | Vega vs. Contract Cleaning | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐    Filed motion of [ use listing in "Motion" box above.]

(2) ☐    Brief in support of motion due _____.

(3) ☐    Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐    Ruling/Hearing on _____ set for _____ at _____.

(5) ☐    Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐    Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐    Trial[set for/re-set for] on _____ at _____.

(8) ☐    [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐    This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■    [Other docket entry]    Enter Memorandum Opinion and Order. Defendant Contract Cleaning's motion to dismiss counts X and XI is granted in part and denied in part (R. 32-1). Defendant Boltz Family Limited Partnership's motion to dismiss the third amended complaint is granted in part and denied in part (R. 35-1). Defendant UPS's motion to dismiss is granted in part and denied in part (R. 36-1). Plaintiffs have until 11/8/04 to file a Fourth Amended Complaint.

*Amy J. St. E*

(11) ■    [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | OCT 1 8 2004 | |
| ✓ | Docketing to mail notices. | | 47 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TH ✓ | courtroom deputy's initials | date mailed notice | |

U.S. DISTRICT COURT

2004 OCT 18 PM 4:20

Date/time received in central Clerk's Office    mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GLORIA VEGA, et al., on behalf of          )
themselves and all others similarly situated,   )
                                            )
                                            )
              Plaintiffs,                   )
                                            )        No. 03 C 9130
       v.                                   )
                                            )
CONTRACT CLEANING MAINTENANCE,              )
INC., et al.,                               )
                                            )
              Defendants.                   )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Gloria Vega and others filed an eleven count complaint against Defendants

Contract Cleaning Maintenance, Inc. ("CCM"), Contract Cleaning Systems, Inc. ("CCS"),

Corporate Building Systems, Inc. ("CBS"), Carole Boltz[1], Eric Boltz, Sarah Ann Boltz, Boltz

Family Limited Partnership ("Boltz FLP"), and United Parcel Service, Inc. ("UPS"). Plaintiffs

base the complaint primarily on allegations that Defendants schemed to misclassify non-

managerial janitors and maintenance workers as independent contractors rather than as

employees, and falsified employee records to indicate that individuals classified as employees

never worked more than forty hours a week. The claims include violations of the Fair Labor

Standards Act ("FLSA"), the Racketeering Influenced and Corrupt Organizations Act ("RICO"),

the Illinois Minimum Wage Law, the Illinois Wage Payment and Collection Act ("the Illinois

Wage Act"), the Illinois Workers' Compensation Act and Illinois and Texas common law.

---

[1] Counsel for Carole Boltz informed the Court on October 6, 2004 that Ms. Boltz passed
away. She is accordingly dismissed.

Before the Court are three motions to dismiss. Defendant UPS moves to dismiss all claims against it based on its assertions that it cannot be considered a joint employer and that Plaintiffs have failed to plead a RICO conspiracy pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). Defendants CCS, Eric Boltz, Sarah Ann Boltz and Boltz FLP (collectively referred to herein as "CCS/Boltz") move to dismiss the common law fraud claims for failure to state a claim and for failure to allege fraud with particularity. These Defendants also move to dismiss the RICO claims arguing the claims lack particularity and fail to otherwise allege recognized RICO violations. Finally, CCM moves to dismiss the RICO claims by incorporating and adopting the arguments and reasoning of both CCS/Boltz and UPS. For the reasons detailed below, the motions are granted in part and denied in part.

## FACTUAL ALLEGATIONS[2]

### I. The Parties

#### A. Plaintiffs

Plaintiffs Gloria Vega, Hugo Ayala, Patricia Ayvar, Mario Diaz, Flora Duran, Juana Flores, Roberto Lopez Flores, Angelica Gonzalez, Daniel Gonzales, Jose Antonio Jimenez, Lino Landes, Alica Lira, Enrique Martinez, Juana Ortiz, Ricardo Perez, Adela Neri Reyes, Reynaldo Salgado, Benito A. Silva, Martha Vargas, Bertha Zavala, Luis Zavala and Virginia Zavala were employed by CCM, UPS, CBS and Carole and Eric Boltz. (R. 30-1, Compl. at ¶ 4.) Plaintiffs Juan S. Esquivel and Candelaria Martinez Esquivel were employed by CCS, UPS and Carole, Eric and Sarah Ann Boltz in Texas. (*Id.* at ¶ 5.)

_____

[2] The allegations in the Complaint are assumed true for the purpose of deciding these motions to dismiss.

## B.    Defendants

### 1.    Corporate and Partnership Defendants

Defendants CCM and CBS are both Illinois corporations engaged in the provision of janitorial and maintenance services. (*Id.* at ¶¶ 10-11.) Defendant CCS is a Nevada corporation providing janitorial and maintenance services in Texas and other states. (*Id.* at ¶ 13.) Defendant Boltz FLP is a limited partnership registered in Texas. Its general partner is CCS, and it derives income from the operations of CCM and CCS. (*Id.* at ¶ 18.) Defendant UPS is a corporation engaged in the interstate shipment of letters and packages. (*Id.* at ¶ 19.)

### 2.    Individual Defendants

Defendant Eric Boltz serves as the secretary of CCM and president of CCS. Carole Boltz was the president of CCM. Both Carole and Eric Boltz were once part owners of CCM, and Eric Boltz is now part owner of CCS. (*Id.* at ¶ 15-16.) Both Carole and Eric Boltz controlled the employment practices of CCM and CCS and derived revenue from the operations of both corporations. (*Id.*) Defendant Sarah Ann Boltz serves as the secretary and treasurer of CCS. Sarah Ann Boltz has exercised control over the employment practices of CCS and has derived revenue from the operations of CCM and CCS. (*Id.* at ¶ 17.)

## C.    Boltz Janitorial Enterprise

Plaintiffs refer to all of the various corporations, partnerships, and other entities through which the Boltz family either provided janitorial and maintenance services or held and invested revenue derived from such services as the Boltz Janitorial Enterprise ("BJE"). (*Id.* at ¶ 31.) Plaintiffs allege that BJE is an association-in-fact. (*Id.* at ¶ 233.)

## II.    Substantive Allegations

According to Plaintiffs, the Boltz Defendants, through CCM, CCS and other BJE entities,

3

engaged in a fraudulent scheme at UPS's facilities and other work sites to evade their obligations under the FLSA, other federal and state employment and tax laws and the common law. (R. 30-1, Compl. at ¶ 52.) Plaintiffs allege that the Boltz Defendants and their entities systematically misclassified their non-managerial janitors and maintenance workers as independent contractors in order to evade their legal obligations to pay employees at a rate of one and one-half times their regular rate for all hours worked in excess of forty hours per week, to pay the employees twice a month, to provide their employees with workers' compensation insurance without cost to the employees, to pay various payroll taxes for these employees and to make unemployment insurance contributions for these employees. (*Id.* at ¶ 54.) Plaintiffs further contend that when members of the Boltz family and their entities properly classified some of their janitors and maintenance workers as employees, they then falsified their employee records to create the appearance that the employees never worked more than forty hours a week even though they routinely worked overtime. (*Id.* at ¶ 55.) Plaintiffs allege that Defendants CCM and CCS did not deduct any taxes or indicate that they were paying payroll taxes on Plaintiffs' behalf, and that CCM and CCS further deducted an amount labeled "insurance deduction" from Plaintiffs' wages without their consent. (*Id.* at ¶¶ 67-69, 72, 81-82, 85.) Plaintiffs claim that they never received a copy of any insurance policy purchased with the deducted funds, any summary of its terms or any claim forms. (*Id.* at ¶¶ 71, 72, 84, 85.)

Agents of the Boltz family, CCM and CCS orally informed Plaintiffs and other janitors and maintenance workers that they were independent contractors, and had them sign a document written in English representing themselves as independent contractors. (*Id.* at ¶¶ 94, 96, 97.) When Plaintiffs requested favorable changes in their terms of employment, Defendant members of the Boltz family, CCM and CCS denied their requests and informed them that their status as

4

independent contractors precluded the changes. (*Id.* at ¶ 99.) Plaintiffs claim that they were not independent contractors under any relevant law. (*Id.* at ¶ 100.) Plaintiffs further allege that the Boltz Defendants, CCM and CCS determined Plaintiffs' work schedules, provided Plaintiffs with all necessary equipment, tools and supplies, and paid Plaintiffs on an hourly basis. (*Id.* at ¶¶ 101-103.) Defendants did not permit Plaintiffs to hire or utilize assistants in the performance of their tasks for Defendants, and Plaintiffs did not do so. (*Id.* at ¶105.) Plaintiffs claim that they typically worked five or six days per week, year round, and performed ongoing maintenance and janitorial tasks for the Defendants. (*Id.* at ¶ 108.)

Plaintiffs further allege that Carole Boltz devised practices and procedures to make it falsely appear as though Plaintiffs and other employees were independent contractors. (*Id.* at ¶ 112.) Plaintiffs contend that the Boltz Defendants, CCM and CCS deducted 1% from Plaintiffs' gross wages to purportedly pay for equipment, tools and supplies so that they could claim that Plaintiffs supplied their own equipment. (*Id.* at ¶ 113.) CCM, CCS and UPS, however, supplied these items, which remained their property at all times. Plaintiffs allege that no correlation exists between the cost of the equipment, tools and supplies and the amount deducted from Plaintiffs' wages. (*Id.*) Further, Plaintiffs had no discretion in deciding the type of equipment, tools and supplies that Defendants purchased. (*Id.*) Carole Boltz, according to Plaintiffs, dubbed the managers of their enterprises "inspectors" instead of managers even though they undertook the duties of a typical manager such as hiring, firing and supervising employees. (*Id.* at ¶ 114.)

## III.    The Complaint

Plaintiffs filed a Third Amended Complaint on May 28, 2004. The Complaint contains eleven causes of action, two of which allege various violations of the RICO statute and six of

5

which allege violations of other state and federal statutes. The remaining counts are state common law claims.

## A. Statutory causes of action other than RICO

Count one alleges violations of the FLSA and is directed at all Defendants except Boltz FLP. Specifically the count alleges that Defendants did not pay Plaintiffs overtime for all hours worked in excess of forty hours in a single work week. Plaintiffs contend Defendants willfully carried out these acts in violation of 29 USC § 207(a). (R. 30-1, Compl. at ¶¶ 161-62.)

The remaining statutory causes of action allege violations of Illinois statutory law. Counts two, three, six and seven are directed at CCM, CBS, UPS and Eric Boltz. Count two alleges a violation of the Illinois Minimum Wage Law for Defendants' failure to pay Plaintiffs overtime for hours worked in excess of forty hours in a single work week. (*Id.* at ¶ 164.) Counts three, six and seven each allege violations of the Illinois Wage Act. (*Id.* at ¶¶ 173, 191, 198). Finally, count five alleges a violation of the Illinois Workers' Compensation Act against CCM and CBS. (*Id.* at ¶ 186.)

## B. Common law causes of action

The remaining state law claims allege violations of common law and are directed at different sets of Defendants. Count four alleges that CCM, CBS and CCS breached oral contracts in violation of Illinois and Texas common law. (*Id.* at ¶ 179.) Counts eight and nine allege violations of Illinois and Texas common law against CCM, CCS and Eric Boltz. Count eight alleges constructive fraud, and count nine alleges fraud and misrepresentation. (*Id.* at ¶¶ 219, 228.)

## C. The RICO causes of action

Plaintiffs allege four RICO violations. Plaintiffs claim all Defendants except CBS and

6

UPS violated 18 U.S.C. §§ 1962(a)-(c), and they claim all Defendants but CBS violated 18 U.S.C. § 1962(d). Plaintiffs base these counts upon the same predicate acts.

### 1. Alleged predicate acts

Plaintiffs claim all Defendants except CBS and UPS engaged in predicate acts of mail and wire fraud. Plaintiffs support their claim of mail fraud with allegations that Defendants used the mail to send reports mischaracterizing the status of their employees, the work performed by their employees, the payments made to their employees and the number of employees they employed. Defendants sent these reports to employees as well as various state and federal governmental agencies. (*Id.* at ¶ 241.)

Plaintiffs allege the wire fraud occurred when Defendant members of the Boltz family used the wires to instruct agents of CCM, CCS and other BJE entities how to misclassify employees as independent contractors. Further, Carole and Eric Boltz allegedly used the wire to transmit such information from Illinois to Texas and back. Plaintiffs also allege that members of the Boltz family used the wires to provide false information regarding the number of employees they employed to various federal and state agencies. (*Id.* at ¶ 242.)

### 2. The individual RICO allegations

Plaintiffs allege violations of 18 U.S.C. § 1962(a)-(c) in count ten. Plaintiffs contend that members of the Boltz family, CCM, CCS and Boltz FLP received income from a pattern of mail and wire fraud, and used the income and the proceeds from such income in the acquisition of interests in and the establishment and operation of CCM, CCS, other BJE entities and the BJE in violation of 18 U.S.C. § 1962(a). (*Id.* at ¶ 237.) In asserting a violation of 18 U.S.C. § 1962(b), Plaintiffs allege the same Defendants, through a pattern of mail and wire fraud, acquired or maintained an interest in and control of CCM, CCS, other BJE entities and the BJE. (*Id.* at ¶

238.) Finally, Plaintiffs allege the same Defendants violated 18 U.S.C. § 1962(c) by conducting and participating in the conduct of the BJE's affairs through a pattern of mail and wire fraud. (*Id.* at ¶ 239).

Plaintiffs allege two conspiracies in count eleven. Plaintiffs contend that all Defendants except CBS violated 18 U.S.C. § 1962(d) by agreeing that one or more of them would be employed by and associated with the BJE, and conduct and participate in the conduct of BJE's affairs through a pattern of mail and wire fraud in violation of 18 U.S.C. § 1962(c). Similarly Plaintiffs contend that Defendant members of the Boltz family and UPS violated 18 U.S.C. § 1962(d) by agreeing that one or more of them would be employed by and associated with CCM and CCS, and conduct and participate in the conduct of CCM's and CCS's affairs through a pattern of mail and wire fraud in violation of 18 U.S.C. § 1962(c). (*Id.* at ¶ 242.)

## LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, not the merits of a claim. *See Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). When evaluating a motion to dismiss, the Court views the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003) (citation omitted). The Court is not, however, "obliged to accept as true conclusory statements of law or unsupported conclusions of fact." *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 614 (7th Cir. 2001). Dismissal is appropriate only where it appears beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984).

**ANALYSIS**[3]

Defendants argue that the Court should dismiss the following:  1) the non-RICO related statutory causes of action against UPS because UPS is not a joint employer; 2) the common law claims against CCM and CCS/Boltz for failure to state a claim and failure to allege fraud with sufficient particularity; and 3) the RICO violations against all Defendants for failure to state a claim and failure to state a claim with particularity.

## I.  Counts One, Two, Three, Six and Seven Cannot Be Dismissed Against UPS as a Matter Of Law

UPS maintains that it cannot be held liable for alleged violations of the FLSA or the three Illinois statutes because it is not a joint employer as a matter of law.  UPS argues that CCM and CCS were Plaintiffs' sole employers because they alone exercised full control over Plaintiffs.  UPS points to Plaintiffs' allegations regarding CCM's and CCS's responsibilities as well as to the contract governing UPS's relationship with CCM and CCS in support of their argument.

### A.  FLSA

Plaintiffs allege that Defendants violated the FLSA provision mandating that an employer shall not employ any employees for more than forty hours in one week unless the employees receive compensation at a rate of at least one and one-half times the employees' regular rate for all hours worked in excess of forty hours a week.  29 U.S.C. § 207(a) (2000).  The FLSA takes a broad approach to the terms "employer" and "employ."  *See Secretary of Labor, United States Dept. of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987).  The FLSA defines an "employer," in relevant part, to include "any person acting directly or

---

[3] Because the parties did not raise a choice of law issue and argued only Illinois law in their submissions, the Court will apply Illinois law.  *See American Home Assurance Co. v. Stone*, 61 F.3d 1321, 1324 (7th Cir. 1995).

9

indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (2000). To employ means "to suffer or permit to work." 29 U.S.C. § 203(g) (2000). These definitions are necessarily broad to further the remedial purposes of the FLSA and are intended to stretch "the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S. Ct. 1344, 1350, 117 L. Ed. 2d 581 (1992). *See also United States v. Rosenwasser*, 323 U.S. 360, 363 n.3, 65 S. Ct. 295, 296 n.3, 89 L. Ed. 301 (1945) (quoting Senator Black's statement that the FLSA gives "employee" the broadest definition ever included in any one act).

To the extent UPS argues it is precluded from being Plaintiff's employer solely because Plaintiffs allege that CCS and CCM had control of the terms and conditions of Plaintiffs' employment, UPS is incorrect. The United States Department of Labor promulgated regulations under the FLSA recognizing that an employee may have more than one employer under the statute's broad definition of "employer." *See* 29 C.F.R. § 791.2(a) (2004). Joint employment occurs when "the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s)." *Id.* The regulations further provide that when an employee performs work which simultaneously benefits two or more employers, a joint employment relationship generally will exist when:

> (1) . . . there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or (2) . . . one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or (3) . . . the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control

10

with the other employer.

*Id.* § 791.2(b) (footnotes omitted). In order to be a joint employer with CCM and CCS, UPS must fall into the second category because Plaintiffs have not alleged that Defendants entered into an arrangement to share Plaintiffs' labor or that UPS controls, is controlled by, or is under common control with CCM and CCS. The Court can infer from the Plaintiffs' complaint that UPS, by allowing the alleged scheme to continue, is acting directly or indirectly in the interests of CCM and CCS. (See R. 29-1, Compl. at ¶ 132-134.) While this allegation supports the argument that UPS is acting jointly with CCM and CCS, the question remains whether Plaintiffs' allegations support UPS acting as their employer under the FLSA.

Whether or not an entity is an employer for the purposes of the FLSA turns on the "economic reality" of the working relationship. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 81 S. Ct. 933, 936, 6 L. Ed. 2d 100 (1961). The determination of an employment relationship "does not depend on . . . isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S. Ct. 1473, 1477, 91 L. Ed. 1772 (1947). UPS argues that it is not a joint employer pursuant to the four factors originally set forth by the Ninth Circuit in *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983). In determining joint employer status under the FLSA, *Bonnette* discussed "whether the alleged employer[:] 1) had the power to hire and fire the employees, 2) supervised and controlled employee work schedules or conditions of employment, 3) determined the rate and method of payment, and 4) maintained employment records." *Id.* at 1470. *See also Garcia v. Pace Suburban Bus Serv.*, 955 F. Supp. 75, 76 (N.D. Ill. 1996) (using *Bonnette* four-part test to determine whether entity was a joint employer).

The Seventh Circuit, however, has not specifically addressed what factors a court should

11

use when determining joint employer status. *See Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205 (7ᵗʰ Cir. 1986). At least one other circuit has specifically rejected use of the four-part test cited by UPS when determining whether an entity is a joint employer because it is "unduly narrow, as it focuses solely on the formal right to control the physical performance of another's work." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2ⁿᵈ Cir. 2003). *See also Lopez v. Silverman*, 14 F. Supp. 2d 405, 415 (S.D.N.Y. 1998). The Second Circuit instead relied on the following factors drawn from the Supreme Court's decision in *Rutherford Food Corp. v. McComb*: 1) whether the plaintiffs used the entity's premises and equipment for their work; 2) whether the labor contractor had a business that could or did shift as a unit from one putative joint employer to another; 3) the extent to which plaintiffs performed a discrete line-job that was integral to the entity's process of production; 4) whether responsibility under the labor contracts could pass from one subcontractor to another without material changes; 5) the degree to which the entity or its agents supervised plaintiffs' work; and 6) whether plaintiffs worked exclusively or predominantly for the entity. *Zheng*, 355 F.3d at 72. The Seventh Circuit has applied some of the *Rutherford* factors in determining whether an entity is an employer under the FLSA, but it has not done so in the context of joint employment. *See Lauritzen*, 835 F.2d at 1535. *Rutherford* itself does not specifically identify itself as a "joint employment" case, but the facts of the case are analogous to those present in joint employment cases, and courts have interpreted it as such. *See Zheng*, 355 F.3d at 70; *Lopez*, 14 F. Supp. 2d at 415; *but see Aimable v. Long & Scott Farms*, 20 F.3d 434, 443 (11ᵗʰ Cir. 1994). The Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") regulations also use the *Rutherford* factors in determining whether a joint employment relationship exists. *See* 29 C.F.R. § 500.20(h)(4) (2004). The AWPA regulations provide that "joint employment" under the FLSA is the same as under the AWPA. *See* 29

12

C.F.R. § 500.20(h) (2004). The Court agrees with the Second Circuit that the four-part *Bonnette* test is too restrictive, and instead relies on the *Rutherford* factors in determining issues of joint employment.

UPS argues that because Plaintiffs allege that CCM and CCS paid them, gave them supplies, assigned them work, supervised them, set their terms of employment, set their hours and had the power to hire and fire them, UPS cannot be Plaintiffs' joint employer. In *Rutherford*, however, the Supreme Court found that meat boners were employees of a slaughterhouse even though the contractual boning supervisor, and not the slaughterhouse, had the responsibility of hiring, paying and maintaining complete control over the employees. *Rutherford*, 331 U.S. at 724-25, 67 S. Ct. at 1474. *See also Zheng*, 355 F.3d at 70. It is entirely possible, therefore, for UPS to be Plaintiffs' joint employer even though Plaintiffs do not allege that UPS hired, fired or paid them.

Further, Plaintiffs allege specific facts that, in light of the *Rutherford* factors, indicate a joint employment relationship. Plaintiffs allege that they worked regularly on UPS's premises and that UPS set their work hours, gave detailed work assignments, supervised their work and maintained records of the hours they worked. (R. 30-1, Compl. at ¶¶ 59, 72, 77, 78, 85, 118, 122, 126.) These allegations support the first and fifth *Rutherford* factors. Viewing these allegations in the light most favorable to Plaintiffs and given the liberal notice pleading requirements of Rule 8, the Court cannot conclude that UPS is not a joint employer as a matter of law under the FLSA.[4]

---

[4] Plaintiffs' allegations also support the second and fourth *Bonnette* factors, so even if the Court followed *Bonnette*, Plaintiffs' allegations are sufficient.

**B.  Illinois statutory violations**

Plaintiffs maintain that UPS has violated the Illinois Wage Act, the Illinois Workers' Compensation Act and the Illinois Minimum Wage Law.  The general Illinois Supreme Court test for joint employment is whether "two or more employers exert significant control over the same employees." *Village of Winfield v. Illinois State Labor Relations Bd.*, 176 Ill. 2d 54, 60, 678 N.E.2d 1041, 1044, 223 Ill. Dec. 33, 36 (1997) (citations and quotations omitted).  In deciding the issue of joint employment, courts can consider a "putative joint employer's role in 'hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job.' " *Id.* (quoting *Orenic v. Illinois State Labor Relations Bd.*, 127 Ill. 2d 453, 475, 537 N.E.2d 784, 794-95, 130 Ill. Dec. 455, 465-66 (1989)).  That CCS and CCM pay Plaintiffs' wages is "only one factor to be considered along with other factors in determining whether an employment relationship exists." *Dildine v. Hunt Transp., Inc.*, 196 Ill. App. 3d 392, 395, 553 N.E.2d 801, 803, 143 Ill. Dec. 94, 96 (1990).  The factors used by the Illinois court are similar to the four *Bonnette* factors, which the Court has already found do not establish cause for dismissal.

Illinois courts have not specifically used the above test in determining joint employment under any of the statutes at issue in the present matter, although the tests the Illinois courts have used are very similar to it.  In determining whether the defendant could be considered the plaintiff's employer in a joint employment situation under the Illinois Wage Act, an Illinois appellate court found instructive *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F. Supp. 920 (N.D. Ill. 1989), a case from this district deciding an issue of joint employment under the FLSA. *Andrews v. Kowa Printing Corp.*, 814 N.E.2d 198, 208, 286 Ill. Dec. 548, 558 (Ill. App. Ct.

14

2004). Considering the "economic reality" of the relationship between the defendants, the *Andrews* court specifically examined where the employees worked, whether the defendant had control over the employees and whether the defendant had any control over day-to-day operations. *Andrews*, 814 N.E.2d at 208, 286 Ill. Dec. at 558. Another Illinois appellate court deciding an issue of joint employment under the Illinois Workers' Compensation Act examined the following factors: "1) who has the right to control an individual; 2) who controls the manner in which the work is performed; 3) the method of payment; 4) who has the right to discharge; and 5) who furnishes the tools, materials, and equipment." *Dildine*, 196 Ill. App. 3d at 394, 553 N.E.2d at 803, 143 Ill. Dec. at 96 (citation omitted). Of these factors, the most important factor is the right to control the work. *Id.* Both of these cases hinge on the entity's degree of control over the employees and their work. Plaintiffs plead sufficient facts to support a finding of joint employment under the above factors. The Court denies UPS's motion to dismiss the statutory violations in Plaintiffs' causes of action two, three, six and seven.

## II. Plaintiffs Sufficiently Plead Common Law Fraud, But Do Not Allege Constructive Fraud With Particularity

Defendants CCM and CCS/Boltz argue that the Court must dismiss Plaintiffs' constructive fraud and fraudulent misrepresentation claims for failure to allege fraud with particularity and for failure to state a claim upon which relief can be granted. The Court addresses each argument separately.

### A. Plaintiffs State Claims for Constructive Fraud and Fraudulent Misrepresentation

Defendants argue that Plaintiffs have not alleged all of the requisite elements of constructive fraud and fraudulent misrepresentation. Specifically, Defendants argue that Plaintiffs' constructive fraud claim fails to allege a fiduciary relationship. They also assert that

Plaintiffs' claim of fraudulent misrepresentation fails because it relies on a misrepresentation of law, which is not actionable.

### 1. Plaintiffs allege the confidential relationship necessary to state a claim for constructive fraud

Constructive fraud is defined as "any act, statement or omission which amounts to positive fraud or which is construed as a fraud by the courts because of its detrimental effect upon public interests and public or private confidence." *In re Estate of Neprozatis*, 62 Ill. App. 3d 563, 568, 378 N.E.2d 1345, 1349, 19 Ill. Dec. 470, 474 (1978). To state a claim for constructive fraud, Plaintiffs must "allege facts establishing the breach of duty arising from a fiduciary or confidential relationship whereby the fiduciary has profited." *Hoopingarner v. Stenzel*, 329 Ill. App. 3d 271, 278, 768 N.E.2d 772, 778, 263 Ill. Dec. 691, 697 (2002) (citation omitted). A fiduciary relationship may exist as a matter of law by virtue of the relationship between the parties, such as the relationship between an attorney and a client. *In re Estate of Rothenberg*, 176 Ill. App. 3d 176, 179, 530 N.E.2d 1148, 1150, 125 Ill. Dec. 739, 741 (1988) (citation omitted). Such a relationship may also "arise from the facts of [a] particular situation, for example, where there is trust reposed on one side and resulting superiority and influence on the other." *Id.* Degree of kinship, disparity in age, health, mental condition, education and business experience between the parties and the extent to which the allegedly subservient party entrusted the dominant party with the handling of his business affairs are all factors to be considered in determining whether a fiduciary relationship exists. *Id.* at 180 (citation omitted). Courts sometimes also take into consideration the nature of the underlying transaction to determine the presence of a fiduciary relationship. *In re Estate of Long*, 311 Ill. App. 3d 959, 965, 726 N.E.2d 187, 192, 244 Ill. Dec. 591, 596 (2000).

Plaintiffs properly allege a fiduciary or confidential relationship. While the presence of an employer-employee relationship alone is not enough to establish a fiduciary relationship, proof of domination and influence may impose a fiduciary duty. *Gross v. Univ. of Chicago*, 14 Ill. App. 3d 326, 339, 302 N.E.2d 444, 454 (1973); *Houben v. Telular Corp.*, 231 F.3d 1066, 1075 (7th Cir. 2000). Plaintiffs allege that CCM, CCS and Eric and Carole Boltz occupied a position of superiority over Plaintiffs by virtue of the disparity in their education and business experience as well as Plaintiffs' limited proficiency with the English language. (R. 30-1, Compl. at ¶¶ 201, 202.) Plaintiffs further allege that these Defendants specifically sought workers like Plaintiffs with limited knowledge of employment practices and the English language to ensure that the workers would be more likely to rely on Defendants' false representations. (*Id.* at ¶ 204-06.) These allegations support the presence of a fiduciary relationship between Plaintiffs and these Defendants.

### 2. Plaintiffs allege a claim for fraudulent misrepresentation

Plaintiffs allege that Defendants fraudulently misrepresented to Plaintiffs and other employees that they were independent contractors and not employees. Defendants seek dismissal of this claim on the basis that it relies on a misrepresentation of law, not fact. Generally, misrepresentations of law do not constitute fraud because the parties are presumed to be equally capable of knowing the law. *Kinsey v. Scott*, 124 Ill. App. 3d 329, 338, 463 N.E.2d 1359, 1366, 79 Ill. Dec. 584, 591 (1984) (citation omitted). The relevant inquiry, however, has "evolved from a strict misrepresentation of fact versus law dichotomy to whether the misrepresentation could have been discovered *merely* by reviewing the applicable [law]." *Gilmore v. Kowalkiewicz*, 234 Ill. App. 3d 522, 529, 600 N.E.2d 492, 497, 175 Ill. Dec. 561, 566 (1992); *see also Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 934, 791 N.E.2d

553, 559, 274 Ill. Dec. 461, 467 (2003) (stating the appropriate test for determining whether a misrepresentation of law is actionable is "whether the misrepresentation could be discovered 'merely' by reviewing the applicable law"). The Court cannot conclude that determination of whether an individual is an employee or an independent contractor for purposes of the tax code is a matter of *merely* reviewing the applicable law.

Further, Illinois law recognizes narrow exceptions to the general proposition that misrepresentations of law cannot constitute fraud. One such exception exists where a fiduciary relationship exists between the parties. "Courts of equity look with suspicion upon any transaction by which a person occupying a relation of trust and confidence towards another obtains any benefit from the confiding party, and under some circumstance, . . . will set aside a transaction on the ground that a confidential relation existed, whether the misrepresentations were as to facts or the law." *Stephens v. Collison*, 249 Ill. 225, 238-239, 94 N.E. 664, 669 (1911); *see also Paskas v. Illini Fed. Sav. & Loan Ass'n*, 109 Ill. App. 3d 24, 31, 440 N.E.2d 194, 199, 64 Ill. Dec. 642, 647 (1982). As discussed above, Plaintiffs have alleged that a fiduciary relationship exists between themselves and these Defendants. Accordingly, Plaintiffs have alleged an actionable misrepresentation.

### B.    Plaintiffs Plead Fraudulent Misrepresentation But Not Constructive Fraud With Particularity

Defendants CCM, CCS and Eric Boltz argue Plaintiffs have not pled fraud with particularity. Specifically, they argue Plaintiffs have not alleged the time, place or content of the false representations. They also assert that Plaintiffs fail to allege the identity of the individuals making the false representations.

Federal Rule of Civil Procedure 9(b) requires Plaintiffs to plead the circumstances

18

constituting fraud with particularity. FED. R. CIV. P. 9(b). The purpose of this heightened

pleading requirement is to "force the plaintiff to do more than the usual investigation before

filing his complaint." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir.

1999). To satisfy the Rule 9(b) requirement, a plaintiff must plead "the identity of the person

who made the misrepresentation, the time, place and content of the misrepresentation, and the

method by which the misrepresentation was communicated to the plaintiff." *Uni*Quality, Inc. v.

Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (citations omitted). In other words, Rule 9(b)

requires the identification of "the who, what, when, where, and how: the first paragraph of any

newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Plaintiffs' claim of fraudulent misrepresentation is subject to the particularity

requirements of Rule 9(b). The elements of fraudulent misrepresentation are: "(1) a false

statement of material fact; (2) defendant's knowledge that the statement was false; (3)

defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the

truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *See

Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591, 221 Ill. Dec. 389,

396 (1996) (citations omitted). For Plaintiffs to plead their fraud claim with particularity, they

must specify who made the misrepresentations, the content of the misrepresentations and when,

where and how the misrepresentations were communicated to the plaintiffs.

Plaintiffs specifically allege the content of the misrepresentations (that Plaintiffs were

independent contractors not employees) and how Defendants communicated the

misrepresentations (orally and in writing). (R. 30-1, Compl. ¶ 221.) Plaintiffs allege the who,

where, and when of the misrepresentations with less specificity. They allege Defendants made

the misrepresentations through agents whose names are not known to the Plaintiffs at or about

the time the Defendants hired the Plaintiffs and at other times through their employment. (*Id.*)

Courts may relax the heightened pleading requirements of Rule 9(b) when the details of the fraud are exclusively within the defendant's knowledge. *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998). When plaintiffs are not privy to the particular individuals responsible for the misrepresentation of which they complain for instance, they may not have to plead that information with specificity. *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1329 (7th Cir. 1994).

Defendants argue the Rule 9(b) requirements should not be relaxed here because the identity of the individuals who spoke with the Plaintiffs does not lie exclusively within the Defendants' control. In instances where a defendant is more likely to have information regarding names of agents who had contact with a plaintiff and dates of communications with plaintiff, courts will typically not dismiss a plaintiff's claim for fraud for lack of particularity when the plaintiff can obtain these details through discovery. *Smith v. Am. Gen. Life & Accident Ins. Co.*, No. 99 C 3743, 1999 WL 965712, at *4 (N.D. Ill. Sept. 29, 1999). *See also Georgia-Pacific Corp. v. Walsh Const. Co. of Illinois, Inc.*, No. 99 CV 5128, 1999 WL 1212645, at *2 (N.D. Ill. Dec. 14, 1999) (distinguishing *Smith* on the basis that the plaintiff in *Smith* lacked sophistication and knowledge regarding the facts surrounding the dispute). In the instant case, Defendants should have records detailing when they hired Plaintiffs and who hired them. Plaintiffs also allege that some of the Plaintiffs never knew the name of the Defendants that communicated the misrepresentation to them. These allegations, taken together with the other allegations in the complaint, suggest that this information lies within the control of Defendants. Ultimately, Plaintiffs have pled sufficient facts to establish they conducted a precomplaint investigation and satisfied the mandates of Rule 9(b). Accordingly, Defendants' motion to

20

dismiss Plaintiffs' claim for fraudulent misrepresentation is denied.

Plaintiffs do not, however, allege constructive fraud with similar specificity. As mentioned above, constructive fraud is defined as "any act, statement or omission which amounts to positive fraud or which is construed as a fraud by the courts because of its detrimental effect upon public interests and public or private confidence." *In re Estate of Neprozatis*, 62 Ill. App. 3d, at 568, 378 N.E.2d at 1349, 19 Ill. Dec. at 474. To satisfy Rule 9(b), the plaintiff must plead the circumstances of the alleged constructive fraud with particularity.[5] *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997); *Ulatowski v. John Sterling Corp.*, No. 03 C 8847, 2004 WL 1385829 (N.D. Ill. June 17, 2004). Plaintiffs allege "defendants intentionally concealed . . . material facts from workers seeking employment and their employees." (R. 30-1, Compl. at ¶ 212.) While Plaintiffs allege what material facts Defendants allegedly concealed, Plaintiffs make no attempt to identify who concealed the material facts or when, where or how the material facts were concealed. Unlike Plaintiffs' claim for fraud, it is not appropriate to relax the Rule 9(b) requirements in this instance because Plaintiffs have not alleged any specific or even approximate facts particularizing its fraud allegation. Consequently, Plaintiffs' eighth cause of action for constructive fraud is dismissed against Defendants CCM, CCS and Eric Boltz without prejudice.

---

[5] In support of their argument that Rule 9(b) does not apply to a constructive fraud action, Plaintiffs cite an opinion from the Southern District of Texas which does not apply Rule 9(b) to a cause of action for constructive fraud because intent to deceive is not an element of constructive fraud under Texas law. *See Askanse v. Fatjo*, No. H-91-3140, 1993 U.S. App. LEXIS 19392, at *4-5 (S.D. Tex. June 16, 1993). The Court does not find this reasoning persuasive. Intent is not subject to the particularity requirements of Rule 9(b). *See* Fed. R. Civ. P. 9(b). Texas defines constructive fraud as "a breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship." *Hubbard v. Shankle*, 138 S.W. 3d 474, 483 (Tex. App. 2004). Similar to Illinois law, the Court finds the alleged breach must be pleaded with specificity.

21

### III. Plaintiffs Allegations of RICO Violations

Defendants CCM and CCS/Boltz argue that the Court should dismiss Plaintiffs' RICO causes of action in counts ten and eleven for failure to state a claim upon which relief can be granted and for failure to allege fraud with particularity. Defendant UPS argues that the Court should dismiss count eleven for failure to allege a fraudulent conspiracy with particularity and for failure to state a claim upon which relief can be granted. These arguments are addressed individually below.

#### A. Plaintiffs Allege Predicate Acts of Mail And Wire Fraud With Sufficient Particularity

Because Plaintiffs allege predicate acts of mail and wire fraud, the particularity requirements of Rule 9(b) apply. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 729 (7th Cir. 1998). Plaintiffs must allege the "who, what, where, when, and how" of the mailings and wire transfers. *Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 955 (N.D. Ill. 2002). Defendants assert that Plaintiffs have not met his requirement.

In their allegations of mail fraud, Plaintiffs allege who (Defendant members of the Boltz family, CCM, CCS and the Boltz FLP), what (reports mischaracterizing the status of their employees, the work performed by their employees and the payments made to their employees), where (from Illinois and Texas and the other states in which they did business to the various state and federal agencies), and how (mail). (R. 30-1, Compl. at ¶ 241.) Plaintiffs do not specifically allege when these reports were sent. As discussed above, courts may relax Rule 9(b)'s requirements when a plaintiff needs discovery to obtain specific facts concerning the alleged fraud that could not have been obtained without discovery. *Shapo*, 246 F. Supp. 2d at 955-56 (citing *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998)). Since

information regarding when the allegedly fraudulent reports were sent lies exclusively within the control of Defendants, the Court excuses this subject from specificity.

In their allegations of wire fraud, Plaintiffs allege who (Defendant members of the Boltz family, CCM and CCS), what (instructed agents of CCM and CCS and other BJE entities how to misclassify employees as independent contractors and misstated the number of employees they employed), where (from Illinois to Texas and other states and from Texas to Illinois and other states), and how (over the wire). (R. 30-1, Compl. at ¶ 242.) Again, Plaintiffs do not specifically allege when these events transpired, but Defendants have control of this information.

Defendants point out that Plaintiffs lumped all Defendants together in their allegations of mail and wire fraud and argue that such lumping is insufficient for pleadings of fraud. This case is analogous to *Petri v. Gatlin*, 997 F. Supp. 956 (N.D. Ill. 1997). In *Petri*, the defendants distributed misleading brochures to potential customers, which plaintiffs received copies of prior to entering into contractual agreements with the defendants. *Id.* at 974. The court denied the defendants' motion to dismiss the plaintiffs' fraud claims, even though the plaintiffs lumped all defendants together, because the plaintiffs alleged all of the details they reasonably could have been expected to allege. *Id.*

Similar to *Petri*, the Plaintiffs in this case cannot be expected to know the particular roles of each individual Defendant in perpetuation of their fraudulent scheme. Plaintiffs were unskilled janitorial and maintenance employees without access to information regarding the manner in which each particular Defendant participated in the alleged fraud. Accordingly, Defendants' motion to dismiss Plaintiff's RICO claims for failing to allege the predicate acts of mail and wire fraud with particularity is denied.

23

**B.      The RICO Causes Of Action For Violations of §§ 1962(c) and (d) State Claims Upon Which Relief Can Be Granted**

      **1.      18 U.S.C. §§ 1962(a) and (b) (Count Ten)**

Defendants CCM and CCS/Boltz argue that Plaintiffs' Third Amended Complaint fails to sufficiently allege an investment injury as required by 18 U.S.C. § 1962(a) and an acquisition and maintenance injury as required by 18 U.S.C. § 1962(b). According to Defendants, Plaintiffs must allege injury arising specifically from Defendants' investment of the revenues from the racketeering activity in an enterprise and acquisition and maintenance of an interest in an enterprise.

A plaintiff bringing a claim under § 1962(a) must allege that he was injured from a defendant's use or investment of income derived from racketeering activity. *Xinos v. Kappos*, 270 F. Supp. 2d 1027, 1031 (N.D. Ill. 2003). Most appellate courts have held that a claim under this subsection fails if it attempts to plead an injury caused by the predicate racketeering activity. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 n.6 (7th Cir. 1994). Courts have also held that plaintiffs must plead a different injury from the injury caused by the mere reinvestment of racketeering proceeds into a business activity. *Id.* The investment must proximately cause the injury. *Pinski v. Adelman*, No. 94 C 5783, 1995 WL 669101, at *8 (N.D. Ill. Nov. 7, 1995). Even though the Seventh Circuit has neither adopted nor rejected the majority position, each court in this district that has addressed this issue has adopted the majority use or "investment rule." *See Shapo*, 246 F. Supp. 2d at 965 (listing the courts that have addressed the issue and adopted the majority use or "investment rule"); *see also Builders Bank v. First Bank & Trust Co. of Illinois*, No. 03 C 4959, 2004 WL 1497766, at *5 (N.D. Ill. June 30, 2004); *Carnegie v. Household Int'l, Inc.*, 220 F.R.D. 542, 546 (N.D. Ill. 2004); *Xinos*, 270 F. Supp. 2d

24

at 1031. Although Plaintiffs contest the majority position and ask the Court to reject Defendants' argument, the Court continues to adopt the majority position. *See Xinos*, 207 F. Supp. 2d at 1031; *Shapo*, 246 F. Supp. 2d at 965.

Plaintiffs make only bare allegations of an injury sustained from Defendants' alleged RICO violations. (R. 30-1, Compl. at ¶ 245.) Plaintiffs do not allege any details of Defendants' investment of the income, how the income was invested to injure Plaintiffs or how Plaintiffs' alleged injury is distinguishable from the predicate racketeering act or reinvestment of the income into a business activity. Plaintiffs' allegations are insufficient to allege a claim under § 1962(a). *See Shapo*, 246 F. Supp. 2d at 966 (finding plaintiff's investment injury claim to be insufficient where the plaintiff did not provide any details of defendants' investment of any income and did not allege how the money invested caused them injury.)

Defendants further challenge the sufficiency of Plaintiffs' allegations of an acquisition or maintenance injury under § 1962(b). Defendants argue that Plaintiffs have not alleged an acquisition or maintenance injury separate from the injuries resulting from the mail and wire fraud. A plaintiff bringing a claim under § 1962(b) must allege that a defendant acquired or maintained an interest in an enterprise through a pattern of racketeering, and that an injury that is separate and distinct from the predicate acts resulted from defendant's acquisition or maintenance of that enterprise. *Id.* at 963-64. In this case, Plaintiffs merely allege that Defendants maintained an interest in and control of CCM, CCS and other BJE entities, and that these enterprises harmed Plaintiffs and those similarly situated to them as a result of the Defendants' violation of RICO. (R. 30-1, Compl. at ¶¶ 238, 245.) Because Plaintiffs do not allege an injury that is separate and distinct from the predicate acts, the Court finds Plaintiffs' allegations insufficient to state a claim under § 1962(b). *See Carnegie*, 220 F.R.D. at 546-47

(granting defendants' motion to dismiss the alleged violations of § 1962(b) where the plaintiff failed to allege a separate injury proximately caused by the defendants' ownership of the enterprise and where plaintiff's complaint only alleged that the defendants owned the enterprise and the enterprise harmed the plaintiffs). Accordingly, Defendants CCM's and CCS/Boltz's motions to dismiss Plaintiffs' causes of action for violations of 18 U.S.C. §§ 1962 (a) and (b) are granted.

### 2.  18 U.S.C. § 1962(c) (Count Ten)

Section 1962(c) states that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c) (2000). Defendants CCM and CCS/Boltz argue Plaintiffs have not alleged valid enterprises. The statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (2000). CCM and CCS, as corporations, are clearly enterprises under the RICO definition. Defendants argue instead that CCS is not a valid enterprise because Plaintiffs name CCS both as an enterprise and as a Defendant. A single defendant cannot be both a person and an enterprise under § 1962(c). *Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384, 400 (7th Cir. 1984). Instead, the alleged enterprise must be separate and distinct from the person. *Id.* at 402.[6]

Plaintiffs never allege that either CCS or CCM are both an enterprise and a person in an

---

[6] Unlike § 1962(c), there is no requirement that the enterprise and the person be separate and distinct for violations of §§ 1962(a) or (b). *Shapo*, 246 F.Supp. 2d at 961 n.6.

isolated claim under § 1962(c). Plaintiffs allege that CCM and CCS were employed by and associated with the BJE in violation of § 1962(c). (R. 30-1, Compl. at ¶ 239.) Plaintiffs also allege that members of the Boltz family and the Boltz FLP were employed by and associated with CCM and CCS in violation of § 1962(c). (*Id.* at ¶ 240.) Nowhere in their complaint do Plaintiffs allege that CCS or CCM were both a person and an enterprise in the same claim under § 1962(c). This pleading does not run afoul of § 1962(c)'s separate and distinct requirements.

Defendants also assert that Plaintiffs have failed to adequately allege an association-in-fact enterprise among the various BJE entities. An association-in-fact enterprise is shown "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524, 2528, 69 L. Ed. 2d 246 (1981). An enterprise "must be more than a group of people who get together to commit a pattern of racketeering activity and more than a group of associated businesses that are operated in concert under the control of one family." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995) (citations and quotations omitted). An enterprise is distinguishable from a conspiracy by its structure. *Burdett v. Miller*, 957 F.2d 1375, 1379 (7th Cir. 1992). The enterprise must have "some continuity and some differentiation of the roles within it" as well as "a common purpose of engaging in a course of conduct." *Richmond*, 52 F.3d at 645 (citations omitted).

Plaintiffs adequately allege that the BJE was an association-in-fact enterprise. In *Richmond v. Nationwide Cassel L.P.*, 847 F. Supp. 88 (N.D. Ill. 1994), *aff'd* 52 F.3d 640 (7th Cir. 1995), the plaintiffs alleged that a single family of individuals owned a controlling interest in the entities comprising the association-in-fact and that those entities were "under common control and . . . operated in concert . . . as if they were 100% owned subsidiaries of a common parent."

847 F. Supp. at 91. They also alleged the entities were associated "on an ongoing basis for the purpose of conducting business." *Id.* In affirming the district court's dismissal of the plaintiffs' RICO claims, the Seventh Circuit found the plaintiffs' "nebulous, open-ended description of the enterprise" insufficient to allege an enterprise under the liberal pleading requirements of Federal Rule of Civil Procedure 8. *Richmond*, 52 F.3d at 645.

Unlike the plaintiffs in *Richmond*, Plaintiffs here allege specific details of the alleged association-in-fact. Plaintiffs allege that the association-in-fact consists of all of the members of the Boltz family together with the various corporations, partnerships and other entities through which the Boltz family provided janitorial and maintenance services or held and invested revenue derived from such services. (R. 30-1, Compl. at ¶ 31.) Plaintiffs allege that the purpose of the BJE is to sell janitorial and maintenance services as well as to hold and invest revenue acquired through the sale of these services. (*Id.* at ¶ 30.) As evidence of its continuity, Plaintiffs allege that BJE has been operating continuously since the 1950s. (*Id.* at ¶ 25.)

Plaintiffs also allege differentiated roles of the entities within the structure of the enterprise by stating the roles of the individual family members as well as the corporations in the enterprise. For instance, Carole Boltz and her husband allegedly exercised managerial control over all of the entities until her husband's death, at which point, Eric Boltz began assisting Carole Boltz in her managerial duties. (*Id.* at ¶¶ 33, 35.) The Boltz children maintain control of the operations in the different states. (*Id.* at ¶ 34.) Carole Boltz is alleged to have developed practices and procedures in furtherance of the overall scheme to mischaracterize the Plaintiffs as independent contractors and to have implemented these practices and procedures throughout the BJE entities. (*Id.* at ¶ 112.) Boltz Defendants', CCM's and CCS's roles in the enterprise were to cover up the alleged scheme by deducting 1% from Plaintiffs' gross wages and to refuse to allow

28

Plaintiffs to change their terms of employment. (*Id.* at ¶¶ 113, 99). These allegations are sufficient to allege that BJE is an association-in-fact. Accordingly, Defendants' motion to dismiss Plaintiffs' cause of action under 18 U.S.C. § 1962(c) is denied.

### 3.    18 U.S.C. § 1962(d) (Count Eleven)

Section 1962(d) makes it unlawful for "any person to conspire to violate any of the provisions of subsection (a), (b), or (c)." 18 U.S.C. § 1962(d) (2000). Defendants argue that Plaintiffs failed to state a claim under 18 U.S.C. § 1962(d) because they have not adequately pled a substantive violation of 18 U.S.C. §§ 1862(a), (b), or (c). As discussed above, Defendants are incorrect in this assertion.

Defendants also argue that Plaintiffs have failed to allege a conspiracy to defraud with the particularity required by Rule 9(b). Defendants and Plaintiffs disagree over whether Rule 9(b) applies to the RICO conspiracy allegations. Indeed, courts in this district seems to disagree as well. *Compare Shapo v. Engle*, No. 98 C 7909, 2000 WL 876994, at *4 (N.D. Ill. July 3, 2000) (stating that "in allegations of conspiracy to defraud, Plaintiff must comply with Rule 9's requirements"), *and Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F. Supp. 889, 895-96 (N.D. Ill. 1987) (stating that a plaintiff alleging a RICO conspiracy "must identify the nature of the conspiracy and the defendant's role in it with some particularity" including alleging "with some particularity facts sufficient to show an agreement between the parties to inflict the alleged wrong"), *with Guaranty Residential Lending, Inc. v. Int'l Mortgage Ctr.*, 305 F. Supp. 2d 846, 863 (N.D. Ill. 2004) (stating that Rule 9(b) does not apply to a conspiracy to defraud allegation), *and Schiffels v. Kemper Fin. Servs., Inc.*, No. 91 C 1735, 1993 WL 153850, at *9 (N.D. Ill. May 11, 1993) (stating that RICO "allegations of conspiracy are not measured under Rule 9(b)'s strict pleading standard).

The Seventh Circuit has expressly opted not to decide the extent to which Rule 9(b) applies to allegations under RICO's conspiracy provision. *Goren v. New Vision Int'l Inc.*, 156 F.3d 721, 733 n.10 (7th Cir. 1998) (stating "[t]his court has yet to decide the extent to which Rule 9(b)'s particularity requirement applies to allegations under RICO's conspiracy provision" and that the court "need not reach that issue today"). The Seventh Circuit, however, issued an opinion the year after its decision in *Goren* using language typically used in a Rule 9(b) analysis. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 785 (7th Cir. 1999) (stating plaintiff's complaint "fails to allege with specificity any agreement among the defendants," plaintiff's complaint "lacks any specific allegation that the defendants agreed to the commission (by someone) of two specific predicate acts in furtherance of the alleged conspiracy," and plaintiff's complaint lacked "particular pleadings"). Further, in *Goren*, the Seventh Circuit stated that "[i]t is well established that a complaint may be dismissed if it contains only conclusory, vague and general allegations of a conspiracy." 156 F.3d at 733 (citations omitted); *see also Lachmund*, 191 F.3d at 785. In support of this proposition, the *Goren* court cited a Third Circuit case which held a conspiracy claim must contain: 1) "supportive factual allegations describing the general composition of the conspiracy"; 2) "some or all of its broad objectives"; and 3) "the defendant's general role in the conspiracy." *Goren*, 156 F.3d at 733 (citing *Rose v. Bartle*, 871 F.2d 331, 366 (3rd Cir. 1989)).

Plaintiffs cite *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002) in support of its argument that Rule 9(b) does not apply to allegations of a conspiracy to defraud. In *Walker*, the Seventh Circuit reiterated that conclusory allegations, or allegations of conspiracy that fail to mention an overt act, are sufficient to withstand a Rule 9(b) motion to dismiss. *Walker*, 288 F.3d at 1007-08. The Seventh Circuit also noted that prior decisions of the court that held otherwise

cannot be squared with either its own recent decisions or the Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 995, 152 L. Ed. 2d 1 (2002). *Id.* Neither the conspiracy at issue in *Walker* nor the conspiracies in the cases named by *Walker*, however, alleged a conspiracy to defraud. Further, *Walker* did not list *Goren* or *Lachmund*, cases decided just four years before *Walker*, among the cases cited by the court for being inconsistent with current case law. *See Id.* at 1008. It appears, therefore, that at a minimum Plaintiffs must allege facts from which one can infer each Defendant's agreement to violate RICO. *Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344, 352 (7th Cir. 1992) (citing *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1137 (7th Cir.1986) and *Rose v. Bartle*, 871 F.2d 331, 366 (3rd Cir. 1989)); *see also Lachmund*, 191 F.3d at 785 (dismissing a complaint that lacked allegations of any agreement among defendants to participate in an activity that would violate RICO).

Plaintiffs allege "on information and belief" that all of the Defendants except CBS agreed that one or more of them would commit at least two acts of racketeering activity in violation of 18 U.S.C. § 1962(c). (R. 30-1, Compl. at ¶¶ 247-249). Plaintiffs incorporate several factual allegations as grounds for their suspicions from which an agreement may be inferred. Plaintiffs plead facts adequate to support an inference that Defendant members of the Boltz family, CCM, CCS and the Boltz FLP agreed to commit two predicate acts of mail and wire fraud. An agreement can be inferred from the following allegations: the Defendant Boltz family members established CCM, CCS and the Boltz FLP; CCS is the general partner of Boltz FLP; Carole Boltz was the president of CCM; Eric Boltz currently serves as the president of CCS; Sarah Ann Boltz is the secretary and treasurer of CCS; Carole and Eric Boltz exercised managerial control over all the BJE entities; Defendant members of the Boltz family committed predicate acts of

mail and wire fraud; and Carole Boltz implemented procedures throughout the BJE to make it appear that the employers were independent contractors. (R. 30-1, Compl. at ¶¶ 31, 32, 15, 16, 18, 33, 35, 241, 242, 112.) Accordingly, Defendants' motions to dismiss count eleven against CCM, CCS, Boltz FLP and Defendants Eric and Sarah Boltz are denied.

Plaintiffs do not, however, plead facts sufficient to support a § 1962(d) conspiracy claim against UPS. Other than stating that UPS knew that the BJE entities were misclassifying their employees as independent contractors (R. 30-1, Compl. at ¶ 132), Plaintiffs plead no other facts indicating an agreement between UPS and the BJE entities to participate in the conduct of either the BJE, CCM or CCS in violation of 18 U.S.C. § 1962(c). Further, Plaintiffs fail to allege what role UPS agreed to take in the conspiracy. Conclusory allegations of fraud are insufficient to withstand a motion to dismiss. *See Schiffels*, 978 F.2d at 352. Accordingly, Defendant UPS's motion to dismiss the eleventh cause of action is granted.

## CONCLUSION

For the reasons set forth above, the Defendants' motions to dismiss are granted in part and denied in part. Count eight is dismissed without prejudice against CCM, CCS and Eric Boltz. The alleged violations of 18 U.S.C. § 1962(a) and (b) in count ten are dismissed without prejudice against all Defendants. Count eleven is dismissed without prejudice against UPS.

Dated: October 18, 2004

ENTERED:

AMY J. ST. EVE
United States District Court Judge