IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLORIA VEGA, HUGO AYALA, PATRICIA AYVAR, MARIO DIAZ, FLORA DURAN, JUANA FLORES, ROBERTO LOPEZ FLORES, ANGELICA GONZALEZ, DANIEL GONZALEZ, JOSE ANTONIO JIMENEZ, LINO LANDES, ALICIA LIRA, ENRIQUE MARTINEZ, JUANA ORTIZ, RICARDO PEREZ, ADELA NERI REYES, REYNALDO SALGADO, BENITO A. SILVA, MARTHA VARGAS, BERTHA ZAVALA, LUIS ZAVALA, VIRGINIA ZAVALA, JUAN ESQUIVEL, and LUCRESIA AMADOR on behalf of themselves and all other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CONTRACT CLEANING MAINTENANCE, INC., CONTRACT CLEANING SERVICES, INC., CORPORATE BUILDING SYSTEMS, INC., CAROLE BOLTZ, ERIC BOLTZ, SARAH ANN BOLTZ, BOLTZ FAMILY LIMITED PARTNERSHIP, and UNITED PARCEL SERVICE, INC., <br><br> Defendants. | No. 03 C 9130 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On November 15, 2004, the named Plaintiffs filed the Fourth Amended Complaint, alleging that Defendants fraudulently treated Plaintiffs as independent contractors and misrepresented the number of hours Plaintiffs worked in violation of, inter alia, the Fair Labor Standards Act ("FLSA"). (R. 53-1, Compl. ¶1.) Plaintiffs move the Court to authorize this case to proceed as a representative action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), and to

1

approve the mailing of notice to potential, opt-in plaintiffs. (R. 49-1, Pls.' Mot. to Proceed as Representative Action.) Because Plaintiffs propose to send notice to all persons who provided janitorial or maintenance services for Defendants within three years of the mailing of the notice, Plaintiffs also ask this Court to order Defendants to provide Plaintiffs with the names, last known addresses, and phone numbers, of these potential plaintiffs within 21 days of the Court's order. (*Id.*) In Plaintiffs' Reply Memorandum in Support of this motion, however, Plaintiffs limit the scope of their request, seeking to mail notice of this action only to those workers who provided janitorial or maintenance services for Defendant Contract Cleaning Maintenance ("CCM") or defendant Contract Cleaning Services ("CCS") in the states of Illinois and Texas. (R. 66-1, Pls.' Reply Mem. in Supp. of Mot. to Proceed as Representative Action.) The Court therefore confines its analysis to whether to approve notice for those potential plaintiffs in Illinois and Texas.

Defendants ask that if the Court approves the notice, that the Court require each potential plaintiff to provide a copy of a government-issued photograph identification as a condition to joining this action. (R. 56-5, Def. CCM's Opp'n to Pls.' Proposed Notice of this Action to Potential Pls.) The parties also dispute the precise wording of the proposed notice. (R. 55-5, UPS' Resp. in Opp'n to Pls.' Mot. to Proceed as a Representative Action.) For the reasons given below, the Court approves the mailing of notice to the potential plaintiffs in Illinois and Texas in the form presented by Plaintiffs. The Court also declines to require the potential plaintiffs to provide a government-issued identification as a prerequisite to joining this action.

**I.     Approval of Notice and Allowed Scope**

    **A.     Legal Standard**

29 U.S.C. § 216(b) governs class actions under the FLSA. The Seventh Circuit has held

2

that § 216(b) preempts the analogous class action provision of Federal Rule of Civil Procedure 23. *King v. General. Elec. Co.*, 960 F.2d 617, 621 (7th Cir. 1992). The requirements for a representative action under § 216(b) of the FLSA are as follows:

> An action to recover the liability prescribed in [section 206, 207 or 215(a)(3) of title 29] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Section 216(b)'s requirement of written consent to join in a collective action, which is known as an "opt-in" requirement, differs from the class action procedure under Federal Rule of Civil Procedure 23. *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). While a class member in a Rule 23 action "must opt out not to be bound" by the court's decision in the case, a class member in a § 216(b) action "must opt in to be bound." *Id.* This difference has due process implications for the notice requirements. *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1044 (N.D. Ill. 2003). Therefore, in a Rule 23 action, where the action binds all putative class members unless they opt out, "the court shall direct to the members of the class *the best notice practicable* under the circumstances." FED. R. CIV. P. 23(c)(2) (emphasis added). On the other hand, when the action does not bind the members of the putative class unless they opt in, the court may have less need to impose stringent requirements on the notice process. This explains, in part, why § 216(b) does not expressly provide for a court-ordered notice procedure. Nevertheless, the Supreme Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) ... in [FLSA] actions by facilitating notice to potential plaintiffs." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

Courts have not specified the precise contours of how the opt-in requirement of § 216(b)

3

affects the notice procedure. The only requirement that § 216(b) imposes for potential opt-in plaintiffs is that they be "similarly situated" to the named plaintiffs. Some courts have interpreted the similarly situated requirement – which the statute and regulations do not define – as encompassing the Rule 23 standards (commonality, typicality, numerosity and adequacy of representation). *E.g., Burns v. Vill. Of Wauconda*, No. 99 C 0800, 1999 WL 529574, at *2 (N.D. Ill. Jul. 15, 1999). A majority of courts, however, appear to regard the requirements of § 216(b) as "'considerably less stringent' than the Rule 23 requirements." *Perez v. RadioShack Corp.*, No. 02 C 7884, 2003 WL 21372467, at *1 (N.D. Ill. June 13, 2003) (citations omitted). The majority approach "seems more appropriate because it allows persons less likely either to be aware of the suit, or to sue themselves, to receive notice and decide whether to opt in at an early stage. If, after discovery, the court determines they are not 'similarly situated,' it can take remedial action at that time." *O'Brien v. Morse*, No. 02 C 50026, 2002 WL 1290392, at *1 (N.D. Ill. June 11, 2002). That is, the court can later determine "whether the class should be restricted based on the 'similarly situated' requirement after discovery is complete." *Belbis v. County of Cook*, No. 01C 6119, 2002 WL 31600048, at *4 (N.D. Ill. Nov. 18, 2002).

Under the majority approach, "[a] named plaintiff can show that the potential claimants are similarly situated 'by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Taillon v. Kohler Rental Power, Inc.*, No. 02 C 8882, 2003 WL 2006593, at *1 (N.D. Ill. Apr. 29, 2003) (quoting *Realite v. Ark Rests. Corp.*, 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998)). Because the plaintiffs need only make a "modest factual showing," the "similarly situated" standard under § 216(b) "is less stringent than the [class action] requirements under Federal Rule of Civil Procedure 23(b)(3)." *Bontempo v. Westwood One Broad. Servs., Inc.*, No. 01 C 8969, 2002 WL

1925911, at *1 (N.D. Ill. May 3, 2002) (citing *Garza v. Chicago Transit Auth.*, 2001 WL 503036, at *2 (N.D. Ill. May 8, 2001)).

The "modest factual showing" is not hard to meet. "Plaintiffs need not provide conclusive support" for their allegations; an "affidavit, declaration, or other support beyond allegations" may satisfy the required minimal showing that a defendant subjected other similarly situated employees to a common policy. *Nunez v. Pizza Nova, Inc.*, No. 03 C 5928, 2003 WL 23150111, at *1 (N.D. Ill. Dec. 30, 2003).

## B. Analysis

In their original motion, the named Plaintiffs requested that the Court permit them to send the proposed notice to all individuals who worked for any member of Defendant Eric Boltz's family or any entity controlled by the Boltz family in the last three years. In their reply brief, however, the named Plaintiffs limited their requests to those potential plaintiffs in Illinois and Texas. (R. 66-1, Pls.' Reply Mem. in Supp. of Mot. to Proceed as Representative Action.) Because Defendants do not contest the mailing of notice to the potential plaintiffs in Illinois and Mesquite, Texas, the only controversy as to the scope of the proposed class of notice recipients that is before the Court is whether Plaintiffs should send the proposed notice to those potential plaintiffs at locations in Texas other than Mesquite, Texas.

Defendants argue that the named Plaintiffs have not met their burden of showing that the proposed recipients of the notice (i.e., the potential plaintiffs) outside of Illinois and Mesquite, Texas were similarly situated with the named Plaintiffs. (R. 57-4, CCS' Opp'n to Pls.' Proposed Notice to Potential Pls; R. 55-2-4, UPS' Resp. in Opp'n to Pls.' Mot. to Proceed as a Representative Action.) In support for their position, Defendants rely heavily on *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1044 (N.D. Ill. 2003), where the court found that

evidence regarding only 4% of the workforce "is not even a modest factual showing of a common policy or plan." Defendants note that the named Plaintiffs provide declarations from only two janitors in Texas (both in Mesquite) that they were victims of illegal policies by the Defendants – a figure that represents less than 1% of Defendants' workforce in Texas. Because the 1% figure is lower than the 4% figure that the *Flores* court found to be inadequate, Defendants argue that Plaintiffs' evidence "clearly falls short of the required factual showing." (R. 55-2-4, UPS' Resp. in Opp'n to Pls.' Mot. to Proceed as a Representative Action.)

The comparison to *Flores*, however, is inapposite. The *Flores* court did not base its decision on the fact that the plaintiffs only produced affidavits of two workers (4% of a fifty-person workforce). Rather, the court based its decision on the factual inadequacy of the affidavits. Two plaintiffs alleged that they and "other" employees routinely worked hours for which the defendants did not pay them, but the court found this bare testimony to be inadequate to show that the defendant company had a "colorable common policy or plan." *Flores*, 289 F.Supp.2d at 1046. After discounting these affidavits, the only remaining evidence for the *Flores* court to consider was a proffer from two other plaintiffs that they "were not paid for one hour and one-half hour, respectively, of overtime wages." *Id.* This evidence only related to the two employees who made these allegations, not to any other employees, and it involved a trifling amount of unpaid time. The *Flores* court found that evidence that the alleged improprieties affected only 4% of the workforce was inadequate to show a common policy or plan. *Id.* But *Flores* does not stand for the proposition that evidence *coming from* only 4% of the workforce is necessarily inadequate to show a common policy or plan.[1]

Here, unlike in *Flores*, while only a small percentage of the workforce from Texas made

---

[1] In any event, *Flores* is a district court case and does not bind the Court.

6

declarations suggesting a common policy or plan, their allegations relate to their personal observations of the larger group of other workers. (*E.g.*, R. 50, Decls. Supporting Pls.' Mot. to Proceed as Representative Action. Amador Decl., ¶23 (claiming, based on conversations and personal observation, that the defendants subjected her and "all" her coworkers to the same illegal treatment).) More importantly, statements from two former managers from Texas, who had experience managing all the Texas locations, support these allegations. Also unlike in *Flores*, the declarations of these managers are highly specific, with several concrete facts tending to support the existence of a common plan or policy to violate the FLSA. (*E.g.*, R. 49-6, Pls.' Mot. to Proceed as Representative Action (citing R. 50, Decls. Supporting Pls.' Mot. to Proceed as Representative Action, Sampson Decl., ¶3 (stating that it was the "policy" of CCM and CCS "to classify all our janitors as independent contractors")).) Other courts in this Circuit have found that similar declarations from a relatively small percentage of the workforce can adequately demonstrate a common policy or plan. *See, e.g.*, *Nunez v. Pizza Nova, Inc.*, No. 03 C 5928, 2003 WL 23150111, at *1 (N.D. Ill. Dec. 30, 2003) (stating that a party can use "*an* affidavit [or] ... declaration [] to make a minimal showing of other similarly situated employees subjected to a common policy") (emphasis added); *Vazquez v. Tri-State Mgmt. Co., Inc.*, No. 01C5926, 2002 WL 58718, at *3 (N.D. Ill. Jan. 14, 2002) (finding affidavits from two employees sufficient to make a modest factual showing that those employees "and other potential plaintiffs were victims of a common policy or plan to violate the FLSA"); *Krieg v. Pell's Inc.*, No. IP00-1230-C-T G, 2001 WL 548394, at *1 (S.D. Ind. Mar. 29, 2001) (finding that a single affidavit from a manager provided sufficient evidence that a definable class of similarly situated employees exists). This Court finds that the factually specific declarations provided by the named plaintiffs are enough, at this early stage of the litigation, to satisfy the required minimal

7

showing of a common policy or plan.

Defendants note that the two Texas managers left Defendants' employ in 1998 and 1996, respectively, before the time period at issue in this lawsuit. (R. 55-4, UPS' Resp. in Opp'n to Pls.' Mot. to Proceed as a Representative Action.) These managers, however, worked for 34 and 10 facilities, respectively, in Texas for several years, and they allege that Defendants had the common policy in place at all the facilities they managed. (R. 66-3, Reply Mem. In Supp. of Mot. to Proceed as Representative Action (citing R. 50, Decls. Supporting Pls.' Mot. to Proceed as Representative Action, Sampson Decl. ¶¶2, 15; Canales Decl. ¶¶3, 7, 16).) While this testimony does not, by itself, conclusively establish that the alleged illegal policy continued after 1998, it does tend to corroborate other evidence that the alleged illegal policy continued to exist. Current employees, both in Illinois and Texas, have declared that the alleged policy described by the former Texas managers continued throughout the time period at issue in this lawsuit. (*E.g.*, R. 66-3, Reply Mem. In Supp. of Mot. to Proceed as Representative Action (citing R. 50, Decls. Supporting Pls.' Mot. to Proceed as Representative Action, Esquivel Decl., ¶2).) Moreover, Defendant Eric Boltz did not say in his declaration that his companies changed their policies after 1998. Together, this evidence is enough to raise a colorable inference that Defendants engaged in an illegal policy throughout Illinois and Texas that continued during the time period at issue in this case. At this stage, this is all that is needed. *See Nunez*, 2003 WL 23150111, at *1. Accordingly, Plaintiffs may send notice to the potential plaintiffs in Illinois and Texas.

## II. Proposed Identification Requirement

Because the Court permits Plaintiffs to send their proposed notice to all CCM and CCS janitorial and maintenance workers who have worked in Illinois and Texas facilities of those parties over the last three years, the Court must resolve the parties' procedural disputes regarding

8

the notice process.

Defendants argue that the Court should require the potential plaintiffs receiving notice to submit a copy of a government-issued ID with their consent forms in order to opt into the class. Defendant CCM relies on evidence that a large percentage of CCM workers were unable or unwilling to provide valid identification until late 2003 (when CCM began requiring its workers to provide such IDs for various purposes), and that CCM may not have accurate name and address information on file for such employees. The Internal Revenue Service informed CCM that a large number of CCM workers had given the Service incorrect taxpayer identification numbers. Further, the Social Security Administration confirmed that a large number of CCM workers had given social security numbers that were invalid or did not correspond to the names the workers gave CCM. Accordingly, Defendants are concerned that if they are required to provide the named Plaintiffs with names and addresses of all persons who worked for CCM over the last three years, the false information that CCM has on file might cause problems. For example, Plaintiffs could send notice to persons who never worked for CCM, or some individuals could receive multiple consent forms under different names. Defendants argue that requiring a government-issued ID would impose little burden on the potential plaintiffs and would save time and expense in discovery of confirming the identity of the potential plaintiffs. (R. 56, Def. CCM's Opp'n to Pls.' Proposed Notice of the Action to Potential Pls.)

On the other hand, Plaintiffs argue that requiring the opt-in plaintiffs to present a government ID amounts to improper advance discovery. Plaintiffs also argue that Defendants knew about, tolerated, and condoned practices that caused problems with the identification of many of their workers. Defendants, therefore, should not be able to profit from their alleged wrongdoing by imposing an ID requirement on this notice process. (R. 66-8-11, Reply Mem. in

Supp. of Mot. to Proceed as Representative Action.)

Practical issues aside, there is no legal basis for requiring a government ID as part of the opt-in process. Section 216(b) contains no statutory requirement beyond filing a written consent. Moreover, Defendants have failed to cite any cases that require a government ID as a condition of joining a § 216(b) class.

Defendant CCM correctly notes that courts have the power and duty to manage the notice process to best serve the interests of justice. (R. 56-6, Def. CCM's Opp'n to Pls.' Proposed Notice of the Action to Potential Pls.) The Court recognizes that § 216(b) does not expressly provide all of the Court's managing powers and that the Court may infer some such powers from the statute. *Woods v. New York Life Ins., Inc.*, 686 F.2d 578, 580 (7th Cir. 1982). Requiring a government ID, however, is of a somewhat different character than the other management powers that Courts have inferred from § 216(b). These other powers include approving notice, regulating the content and distribution of the notice, and, in appropriate cases, ordering the defendants to provide the named plaintiffs with the names and addresses of potential class members. *Id.* Such powers relate directly to the facilitation of notice, and do not impose any requirements on the potential opt-in plaintiffs (other than the statutory requirement of signed consent). By contrast, requiring a government ID is a significant additional step that may impose substantial burdens on some potential plaintiffs.

Courts have recognized that the FLSA protects undocumented, as well as documented, workers. *See Patel v. Quality Inn S.*, 846 F.2d 700, 706 (11th Cir. 1988) (holding that undocumented workers can sue under the FLSA and recover damages). Because the FLSA provides remedies for undocumented aliens – people who by definition have not complied with at least some of the government's identification requirements – it is unlikely that the FLSA

requires a government-issued ID to be a FLSA plaintiff. Accordingly, because the FLSA does not require a government ID as a condition of joining a FLSA suit, the § 216(b) notice process cannot require potential plaintiffs to provide a government ID as a condition for opting in.[2]

### III. Wording of the Notice

The parties also dispute the language of the notice.[3] The supervising court's power to ensure that the notice is fair and accurate "should not be used to alter plaintiffs' proposed notice unless such alteration is necessary." *King v. ITT Cont'l Baking Co.*, No. 84 C 3410, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986). This principle recognizes that "[t]here are myriad minor variations in the presentation of information that might make a difference to the parties in the case....The only thing that matters to the Court is that the notice of lawsuit and consent form convey accurately and fairly all the necessary information at this stage." *Heitmann v. Chicago*, No. 04 C 3304, 2004 WL 1718420, at *3 (N.D. Ill. July 30, 2004).

Defendants first argue that the notice should say that "fees and expenses may be deducted from any recovery obtained." Such a statement is unnecessary, however, because "[p]otential class members interested in retaining the services of plaintiffs' counsel will undoubtedly inquire on their own." *King*, 1986 WL 2628, at *4.

---

[2] If, during discovery, it becomes apparent that a substantial number of the opt-in plaintiffs are not who they claim to be (i.e., that they are not in fact workers who are "similarly situated" with the current named plaintiffs), the Court can take remedial action to narrow the class. *See Realite v. Ark Rests. Corp.*, 7 F.Supp.2d 303, 308 (S.D.N.Y. 1998).

[3] Plaintiffs consent to Defendants' first objection on page one of the notice and agree that they should delete "(CBS)" after the words "Corporate Building System." (R. 66-11, Reply Mem. in Supp. of Mot. to Proceed as Representative Action.) Accordingly, Plaintiffs shall delete "(CBS)" on page one of the proposed notice. The parties apparently overlooked the fact that "CBS" also appears on the next line of the notice. Presumably, the parties have agreed that they will not refer to "Corporate Building System" as "CBS." Thus, if any party wishes to change "(except CBS)" to "(except Corporate Building System)," they should change the wording of the notice accordingly.

11

Defendants also propose adding the clause "if you join the FLSA claim" to the section entitled "Effect of Joining the FLSA Claim." This change is also unnecessary. Even if this redundancy might contribute some marginal additional clarity, the Court cannot allow Defendants to rewrite Plaintiffs' proposed notice absent necessity. *Id.* at *3.

Finally, Plaintiffs propose a sentence reading, "Your immigration status is not relevant to your FLSA claim." Defendants propose changing "relevant to" to "determinative of," on the grounds that if a potential plaintiff lies about his or her immigration status, Defendants can impeach that potential plaintiff. (R. 55-5, UPS' Resp. in Opp'n to Pls.' Mot. to Proceed as a Representative Action.) But the potential plaintiff's untruthfulness would be "relevant" in such a context, not his or her immigration status as such. Numerous courts have found that immigration status is not relevant in a FLSA action. *E.g., Liu v. Donna Karan Int'l, Inc.*, 207 F.Supp.2d 191 (S.D.N.Y. 2002). Because Plaintiffs' preferred language accurately states the law, the Court will allow them to send their proposed notice.

## CONCLUSION

The Court authorizes Plaintiffs to send the proposed notice, in English and Spanish, to any of the potential plaintiffs in Texas or Illinois who worked for Defendants CCM and/or CCS, for a three-year period prior to the sending of notice. To facilitate this process, as stated in open court, Defendants shall provide the named Plaintiffs with the names, last known addresses, and phone numbers of these potential plaintiffs by February 17, 2005. The potential plaintiffs do not have to provide Defendants a government ID as a condition of opting in to this action. Plaintiffs may use their choice of wording for each of the three parts of the notice disputed by Defendants.

DATED: January 31, 2005  ENTERED

_____
AMY J. STEEVE
United States District Court Judge