# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **GLORIA VEGA,** *et al.*, <br> **on behalf of themselves and all others similarly situated,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **CONTRACT CLEANING MAINTENANCE,** *et al.*, <br><br> **Defendants.** | Case No. 03 C 9130 |

## MEMORANDUM OPINION AND ORDER

NAN R. NOLAN, Magistrate Judge:

Defendants Contract Cleaning Services, Inc. ("CCS"), Eric Boltz, Sarah Ann Boltz, the Boltz Family Limited Partnership, and the Estate of Carole Boltz (collectively "Texas Defendants" or "Defendants") move to compel 13 of the 97 Texas Plaintiffs ("Texas Arbitration Plaintiffs") to arbitrate their claims in this case. For the reasons stated below, the Texas Defendants' motion to compel arbitration [319-1] is denied.

## BACKGROUND

Plaintiffs are 149 individuals who worked as janitors in Illinois or Texas. Plaintiffs allege that defendants wrongly and fraudulently treated Plaintiffs as independent contractors rather than employees in order to evade their legal obligations. Specifically, Plaintiffs allege that Defendants failed to pay them at a rate of one and one-half times their regular rate for hours worked in excess of 40 in one week, paid them once per month instead of twice per month, deducted the costs of workers' compensation from their wages, deducted the cost of some form of accident insurance from their wages without their consent and without complying with the procedural or substantive

requirements of the Employee Retirement Income Security Act (ERISA), and deducted a portion of their wages and retained same. The complaint sets forth claims under the Fair Labor Standards Act (FLSA), ERISA, the Racketeer Influenced and Corrupt Organizations Act (RICO), the Illinois Minimum Wage Law, the Illinois Wage Payment and Collection Act, the Illinois Workers' Compensation Act, the Texas Workers' Compensation Act, the Texas Labor Code, and Illinois and Texas common law of contract, constructive fraud, and fraud. The district court certified this case as a collective action under the FLSA on January 31, 2005. Plaintiffs intend to move for certification of a class for all claims in this action other than the FLSA claim.

The Texas Defendants claim that thirteen of the Texas Plaintiffs signed arbitration agreements with either CCS or a company affiliated with CCS. CCS is, and was at all relevant times, a cleaning services company that provided clients for whom CCS subcontractors provided cleaning services. The Texas Defendants say that nine of the Texas Arbitration Plaintiffs were formerly subcontractors for CCS in Texas and signed a Contract Cleaning Services, Inc.–Subcontractor Agreement or similar agreement ("Subcontractor Agreement") in Texas before performing services for CCS in Texas. In each Subcontractor Agreement, the subcontractor agreed with CCS to arbitrate under the CCS, Inc. Arbitration Policy and Procedures "any and all claims, disputes or controversies that exists now or arise later between Subcontractor and CCS or between Subcontractor and any CCS's employees, officers, partners, owners or affiliated companies, including claims, disputes and controversies arising before, during and after the execution of this Agreement." Defs' Motion, Exhs. 1-9 attached to Exh. A.

The Texas Defendants further claim that some of the Texas Arbitration Plaintiffs were

employees of APlus, a company which also provided cleaning services for customers in Texas. These plaintiffs purportedly signed an arbitration agreement with APlus to arbitrate all disputes that may arise between the employee and APlus, or between the employee and any company affiliated with APlus, entitled the Employee Acknowledgment of Receipt of the APlus Maintenance Services, Inc. Arbitration Policy and Procedures. Defs' Motion, Exhs. 11-14 attached to Exh. A. APlus provided a Spanish translation of the APlus Acknowledgment to Spanish speaking employees. Each signing APlus employee acknowledged his or her understanding that by accepting or continuing employment with APlus, he or she agreed "to submit to binding arbitration (under the Arbitration Policy and Procedures) any and all claims, disputes or controversies that exist now or arise later between me and APlus Maintenance Services, Inc. or between me and any APlus Maintenance Services, Inc. employees, officers, partners, owners, affiliated companies or clients, including claims, disputes and controversies arising before, during and after my employment with APlus Maintenance Services, Inc." Defs' Motion, Exh. 14 attached to Exh. A. Based on these arbitration agreements, the Texas Defendants move to compel the arbitration of all claims brought against them by the Texas Arbitration Plaintiffs.

## DISCUSSION

The parties agree that the Federal Arbitration Act ("FAA") applies to the arbitration agreements here. Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Texas Arbitration Plaintiffs raise three main arguments in opposition to the Texas Defendants' motion to compel arbitration: (1) the Texas Defendants waived any right to demand arbitration by substantially delaying in requesting arbitration and their active

participation in this litigation; (2) even if the Texas Defendants had not waived any right compel arbitration, the arbitration agreements would be unenforceable because they are unconscionable; and (3) the arbitration agreements are invalid and unenforceable for the separate reason that arbitrations would be prohibitively expensive and prevent the Texas Arbitration Plaintiffs from vindicating their federal statutory rights. Because the Texas Defendants waived their right to arbitrate the Texas Arbitration Plaintiffs' claims, the Court need not reach the Texas Arbitration Plaintiffs' alternative arguments.

"Courts may refuse to enforce arbitration agreements on a number of grounds, and federal courts have consistently held that among those grounds is waiver of the right to arbitrate." St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., 969 F.2d 585, 587 (7th Cir. 1992).[1] "Such a waiver can be implied as well as express." Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 390 (7th Cir. 1995). The determination as to whether there has been a waiver must be based on all the circumstances in a particular case. St. Mary's Med. Ctr., 969 F.2d at 588. "Courts must examine the totality of the circumstances and 'determine whether based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate.'" Sharif v. Wellness Intern. Network, Ltd., 376 F.3d 720, 726 (7th Cir. 2004). The relevant question is whether the party seeking arbitration did "all it could reasonably have been expected to do to make the earliest feasible determination of whether to

---

[1] The Texas Defendants attempt to create a dispute about whether federal or state law governs the determination of waiver due to litigation conduct. It does not matter whether Texas law or federal law governs because Texas law applies the same basic waiver principles as under federal law. Sedillo v. Campbell, 5 S.W.3d 824, 826 (Tex. App. 1999) (holding "[t]he standard for determining waiver is the same under both [the Texas Arbitration Act and the Federal Arbitration Act])." Defendants do not argue that there is any salient difference between Texas law and federal law on the issue of waiver of a right to arbitrate due to litigation conduct.

proceed judicially or by arbitration?" Id; Cabinetree, 50 F.3d at 391 (stating a motion to compel arbitration must be made at the "earliest possible opportunity.").

The Texas Arbitration Plaintiffs argue that the Texas Defendants waived their right to arbitrate by delaying for more than two years after commencement of the litigation to move to compel arbitration, actively participating in this litigation throughout that period and taking advantage of many procedural benefits of litigation that are not available under their arbitration procedures. The Texas Arbitration Plaintiffs further argue that the Texas Defendants' delay in seeking arbitration is prejudicial. The Texas Defendants respond that they timely asserted their right to arbitration in their motion to compel arbitration filed on March 20, 2006. The Texas Defendants contend that they have not delayed because five of the Texas Arbitration Plaintiffs were not made plaintiffs in this lawsuit until the filing of the Sixth Amended Complaint on May 10, 2005 and seven of the Texas Arbitration Plaintiffs were first made plaintiffs with the filing of the Seventh Amended Complaint on August 16, 2005.

The Court finds that the Texas Defendants have waived their right to arbitrate. The Texas Defendants did not diligently seek arbitration. The Texas Arbitration Plaintiffs maintain that the Texas Defendants should have promptly moved to compel arbitration at the outset of the litigation. This case was filed on December 18, 2003. The first amended complaint filed on February 23, 2004 put the Texas Defendants on notice that plaintiffs were bringing their FLSA claim on behalf of all nonexempt employees of CCM, CCS and other corporations and partnerships owned or controlled by the Boltz family in Texas, among other places, that provided cleaning services who worked for such defendants during the prior three years. The Texas defendants were thus on notice of the scope and nature of their potential liability by February 23, 2004. More than two years elapsed between

the filing of the first amended complaint and the motion to compel arbitration on March 20, 2006.

Even if the filing of the first amended complaint did not trigger the Texas Defendants' arbitration rights, the granting of plaintiffs' motion to proceed as a collective action under the FLSA on January 31, 2005 sufficed to alert the Texas Defendants that some of the potential, opt-in plaintiffs were covered by arbitration agreements. It is true that the Texas Arbitration Plaintiffs were not parties in the FLSA collective action until their written consents were filed. Hawkins v. Riverboat Services, Inc., 385 F.3d 1099 (7th Cir. 2004). Texas Arbitration Plaintiff Juan Esquivel agreed to be a party plaintiff in May 2004. Five of the Texas Arbitration Plaintiffs (Maria R. Duarte, Juan A. Gomez, Mirna Guadelupe Rivas, Jose Daniel Rivas, and Angie Trujillo) consented in March 2005. The remaining seven Texas Arbitration Plaintiffs (Julia Andrade, Pablo Cartegena, Jose Ochoa Hernandez, Martin Mancha, Ignacio Robles, Walter Lizama Santos, and Florencia Vargas) consented in August 2005. The Texas Defendants did not move to compel the Texas Arbitration Plaintiffs to arbitrate their claims until more than seven months later on March 20, 2006.

The Texas Defendants did not do all they reasonably should have been expected to do to make the "earliest feasible determination" of which forum to elect. It took them more than a year after the district court's decision to certify this case as a collective action under the FLSA and approximately a year after 6 of the 13 Texas Arbitration Plaintiffs had consented to be party plaintiffs to formally demand arbitration. The Texas Defendants chose not to invoke arbitration from February 1, 2005 to March 19, 2006. Moreover, Defendants did not raise the arbitration issue when providing the Texas Arbitration Plaintiffs' names to Plaintiffs' counsel for the opt-in notice. The Texas Defendants have not given any reason for why they might not have asserted their desire to arbitrate promptly after the district court's ruling certifying a collective action in January 2005

or at the latest, promptly after all 13 consents were on file in August 2005.[2]

Defendants argue that some of the delay was due to attempts at settlement. The Seventh Circuit has held that prior to the onset of litigation, "preliminary negotiations concerning a settlement are not sufficient to waive arbitration." Dickinson v. Heinhold Sec., Inc., 661 F.2d 638, 641 (7th Cir. 1981); Carbajal v. Household Bank, 2003 WL 22159473, at *10 (N.D. Ill. Sept. 18, 2003) (noting there is nothing in the Dickinson opinion that would suggest that its conclusion should not also be extended to settlement efforts after the lawsuit has been filed). While engaging in settlement negotiations may not be inconsistent with the right to arbitrate, this case was not referred to this Court for the purpose of conducting settlement conferences until October 7, 2005 and the first settlement conference was not held until March 16, 2006. Defendants did not demand arbitration between February 1, 2005 and October 7, 2005 and have offered no reason for this delay. This is inconsistent with the Seventh Circuit's requirement that a party make the "earliest feasible determination" of the forum. Moreover, if Defendants truly wished to preserve their right to arbitrate during settlement negotiations, they could have informed Plaintiffs' counsel promptly after the October 7, 2005 referral to this Court of their intention to seek arbitration if settlement attempts failed and offered to agree to toll the statute of limitations under the arbitration agreements with

---

[2] Plaintiff Juan Esquivel has additional evidence that the Texas Defendants substantially invoked the judicial process and acted inconsistently with their right to arbitrate his claims. Mr. Esquivel opted in as a party plaintiff in May 2004. Defendant CCS and the Boltz Defendants filed an Answer to the Fifth Amended Complaint in December 2004. Defendant Estate of Carole Boltz filed Answers to the Fifth and Seventh Amended Complaints in 2005. Neither of these Answers, nor Defendants' earlier Answers, pleaded arbitration as an affirmative defense, even though Mr. Esquivel had long before opted in as a party plaintiff. Ohio-Sealy Mattress Man. Co. v. Kaplan, 712 F.2d 270, 273 (7th Cir. 1983) (nothing that "when a party raises its arbitration right as an affirmative defense, the party seeking to prove waiver has a heavy burden."). Mr. Esquivel also responded to interrogatories, requests for admission, and produced documents responsive to requests for production propounded by Defendants.

respect to the Texas Arbitration Plaintiffs during settlement negotiations.

Prejudice to the party resisting arbitration "should weigh heavily in the decision whether to send the case to arbitration." Cabinetree, 50 F.3d at 391. Plaintiffs' claim of prejudice is especially strong here. Between the time of the district court's decision and the motion to compel arbitration, Plaintiffs became subject to a new defense of statute of limitations. Plaintiffs' right to commence arbitration on their FLSA claim may have expired in this interim. The Texas Defendants' arbitration procedures state that a party must demand arbitration within the applicable statute of limitations, and that "[n]either filing nor serving a lawsuit stops the applicable statute of limitations from continuing to run." Exh. 10, p.3, §1; Exh. 15, p. 3, §1. Given that more than two years have already pasted since the filing of this lawsuit and the FLSA statute of limitations is either two or three years (depending on whether the violations are willful), the Texas Arbitration Plaintiffs are concerned that Defendants could cite this clause in opposing their FLSA claims in arbitration on the ground that they failed to initiate arbitration within the applicable limitations period. The Texas Defendants label the Texas Arbitration Plaintiffs' concerns about the statute of limitations as "speculation" but do not explain why the statute of limitations as to their FLSA claims has not expired under the arbitration procedures. Defendants also do not deny that they intend to assert a statute of limitations defense in arbitration. Plaintiffs have legitimate concerns that there may be statute of limitations problems if arbitration of their claims is compelled.

Defendants contend that the statute of limitations issue raised by plaintiffs "is not evidence of prejudice for this Court's determination." Defs' Reply at 9. Defendants' argument ignores the fact that the issue of waiver, including any prejudice caused by potential statue of limitations problems, is for the court and not for the arbitrator where the alleged waiver occurred due to conduct

before the district court. Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 3 (1st Cir. 2005) (holding "the issue of waiver of the right to arbitrate due to inconsistent activity in another litigation forum remains an issue for the court."); Carbajal v. H&R Block Tax Services, Inc., 372 F.3d 903, 905 (7th Cir. 2004).

In a similar case, the defendant employer waited 18 months after the case had been certified as a class action and it had become clear some of the class members were subject to an arbitration provision before moving to stay and asserting its right to arbitration. In re Citigroup, Inc. v. Travelers Property Casualty Corp., 376 F.3d 23 (1st Cir. 2004). The First Circuit held that the employer's delay in seeking arbitration was sufficient to waive its right to arbitrate. It found that the class certification triggered the employer's arbitration rights because it sufficiently alerted the employer that some of the class members were covered by the arbitration clause. "Thus, Travelers was on constructive notice that claims were asserted which were subject to the arbitration provision for at least eighteen months prior to filing the motion to stay. There is no excuse for Traveler's delay in notifying class members of its intention to seek arbitration nor for failing to seek arbitration promptly." Id. at 27. To have compelled arbitration would have prejudiced the employees because claims sent to arbitration may have been subject to new defenses such as statute of limitations and laches. Id. (finding plaintiffs prejudiced because "even if the defenses are not successful, plaintiffs will have to respond to them."). Moreover, the employer had taken advantage of discovery, including depositions, availed itself of the "uniquely judicial" process of MDL consolidation, filed a motion for summary judgment, and "vigorously" opposed class certification. Id. at 27-29.

In the context of this case, the delay of more than a year after the certifying of a collective

action and of more than seven months after all 13 consents were filed was sufficient to waive the Texas Defendants' right to arbitration where the delay was unfairly prejudicial to the Texas Arbitration Plaintiffs. After the case was certified as a collective action under the FLSA, the Texas Defendants were clearly on notice that claims capable of being arbitrated may be involved in this action. Defendants waited for more than a year thereafter to seek to compel the Texas Arbitration Plaintiffs to arbitrate. Even more compelling is the seven-month delay between the time all of the Texas Arbitration Plaintiffs had opted-in to the collective action and the Defendants' assertion of their right to arbitrate. The delay is unexplained, and serious prejudice transpired in the interim. The Texas Defendants delay in seeking arbitration has likely prejudiced the Texas Arbitration Plaintiffs regarding the statute of limitations. Sending the Texas Arbitration Plaintiffs claims to arbitration may be the same as a dismissal with prejudice because they may not have the ability to refile in that forum. For these reasons, the Texas Defendants have waived their right to arbitrate the Texas Arbitration Plaintiffs' claims against them.

## CONCLUSION

The Texas Defendants' Motion to Compel Arbitration [319-1] is denied.

**E N T E R :**

_Nan R. Nolan_

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: June 1, 2006**